# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**CRYSTAL WATSON** *as Next Friend*
*of* **N.L.K.**                                                                                **PLAINTIFF**

**V.**                                                      **NO. 1:17cv00099-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                                         **DEFENDANT**

## MEMORANDUM OPINION

### Procedural Background

Plaintiff initiated this child Social Security disability appeal pursuant to 42 U.S.C. §405(g) on behalf of her minor child, N.L.K., on June 27, 2017. As is customary in these cases, once the Acting Commissioner filed her answer [6], the Court entered an Order [8] that required briefing of the issues on appeal. That Order informed the parties that "[t]he issues before the court are limited to the exact issues properly raised in the briefs . . . ."

This matter was set for and a hearing was held on July 30, 2018. During that hearing, the Court pointed out that it did not find any issue raised by the Plaintiff particularly persuasive but, instead, raised *sua sponte* the issue of whether the ALJ committed reversible error when he failed to consider the medical opinions of an examining psychologist, James B. Austin, Ph. D. During the hearing, counsel for the Acting Commissioner vehemently objected to the Court's authority to *sua sponte* raise the issue, largely based on the argument that Plaintiff had waived the issue by not briefing it. In response, the Court ordered that the hearing was recessed and required that the parties brief "the issue of waiver of any issue alleged not to have been raised in the initial brief of the claimant and the issue of the court's discretion to raise and decide issues in instances of clear/plain error or otherwise." *See*

Minute Entry dated July 30, 2018 [21].  The Commissioner's brief was due 8/13/18 and Plaintiff's response was due 8/20/18.  *Id.*

Later, via email to counsel dated August 17, 2018, the Court allowed the parties to "formally brief the issue of whether the ALJ's failure to properly consider the opinions of James B. Austin, Ph.D. (*see* Exhibit No. 15E at 2-5), and discuss the same in the ALJ's decision, constitutes reversible error."  The Court further stated that any brief on this issue a party wished to file would be  due on or before 8/31/18 and any responsive briefs must be filed by 9/7."

On August 13, 2018, Defendant filed her brief on the waiver/plain error issue.  And, on August 27, Plaintiff filed her response, having been granted an extension to do so by Order [24] dated August 21, 2018.  However, by a two-paged filing [26] made August 28, 2018, Defendant essentially instructed the Court, without any authority cited, that she would not file a brief on the issue of reversible error until after she had seen the Plaintiff's brief.  Def.'s Resp. [871].  Accordingly, Plaintiff filed her brief in response to the Court's August 17 email on August 31, and Defendant filed a response on September 7.

Now, having recited the circuitous procedural history of this case as it played out before this Court, and having thoroughly considered the relevant issues presented, the applicable law, and the record before the Court, the Court finds this case should be reversed and remanded because the AJ's failure to properly consider the medical opinions of an examining psychologist, James B. Austin, Ph. D., prejudiced the claimant and justice requires remand.

**Discussion**

**I. Waiver and the Court's Authority to *Sua Sponte* Raise Issues of Plain Error**

The Acting Commissioner has cited several authorities in support of her argument that Plaintiff has waived the issue of the ALJ's failure to consider the opinion of Dr. Austin and that the Court is without authority to raise the issue *sua sponte*. *See generally* Def. Brief [855]. The undersigned finds it is unnecessary to address authority by authority the waiver issue raised by the Acting Commissioner because the Court finds there is sufficient authority for this Court, acting in an appellate capacity, to raise an issue of error *sua sponte* that is plain from review of the record in order to avoid manifest injustice and, particularly where, as here, there is no prejudice to the Acting Commissioner.[1] Defendant, on the other hand, has provided this Court with no authority on point in support of her conclusory argument that the district court is without authority to remand a case under a plain/clear error standard.[2]

Appellate courts address issues not raised by the parties *sua sponte* in some circumstances pursuant to the plain error doctrine. In *Silber v. U.S.*, 370 U.S. 717 (1962), the United States Supreme Court held that it had

> "the power to notice a 'plain error' though it is not assigned or specified" and that "[i]n exceptional circumstances . . . appellate courts, in the public interest, may, of

---

[1] While Defendant begins her waiver argument, *see* Def. Brief [855], with citations to cases announcing the Fifth Circuit's rule that arguments not raised before the district court cannot be raised for the first time on appeal, the Acting Commissioner neglects to address the exception to that rule which allows review when the court finds it is "necessary to prevent a miscarriage of justice." *See Huskey v. Colvin*, 560 Fed. App'x 367, 370 (5th Cir. 2014) (citing *Thorton v. Schweiker*, 663 F.2d 1312, 1315 (5th Cir. 1981).

[2] Indeed, the Acting Commissioner's reliance on a quote from the Fifth Circuit's ruling in *Anderson v. Schweiker*, 651 F.2d 306, 308 (5th Cir. 1981), is misplaced because it expressly references the principle that the courts do not possess the "power to review ***findings of fact***, even for clear error." In this case the Court does not question any finding of fact made by the ALJ but, instead, the ALJ's commission of legal error for failure to properly consider evidence. Ultimately, based on the reasons that are set out in the section that follows, the undersigned is confident that the Court has restricted itself to a determination of whether substantial evidence supports the ALJ's decision.

> their own motion, notice error to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings."

*Silber*, 370 U. S. at 717-718. This holding has been cited as authority and applied by the Fifth Circuit in criminal and civil cases. For example in *U.S. v. Sealed Appellant*, 591 F.3d 812, 819 (5th Cir. 2009), the Fifth Circuit raised an issue *sua sponte* that was "plain on the face of the [criminal] statute" and affected the defendant's "substantial rights" and because it found it "'seriously affects the fairness, integrity or public reputation of judicial proceedings' to prosecute a juvenile in a manner that Congress has not authorized." The court stated,

> We may raise an issue *sua sponte* "even though it is not assigned or specified," when "plain error is apparent ". . . . We review an issue not raised below only for plain error . . . which is defined as "(1) an error; (2) that is clear or plain; (3) that affects the defendant's substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Vasquez,* 216 F.3d 456, 459 (5th Cir. 2000).

*Sealed Appellant*, 591 F.3d 812, 819-820 (citations omitted). In an ADA case, *Liner v. Hosp. Servs. Dist. No. 1 of Jefferson Parish*, 230 Fed. App'x 361 (5th Cir. 2007) (unpublished), the plaintiff-employee appealed the district court's decision to deny him punitive damages following the employer's motion to alter or amend judgment, filed two months after the jury had returned its verdict. *See id*. at 365. The employee argued that the employer had waived the argument that it was not liable for punitive damages by not presenting it until after the jury had returned its verdict. *Id.* The Fifth Circuit agreed with the employer that "under the plain error doctrine, the district court and . . . [the Court of Appeals were] permitted to address the punitive damages error and correct the initial judgment." *Id*. The Fifth Circuit reasoned that it was uncontested that, as a

4

political subdivision, the employer was not liable for punitive damages under the ADA and, thus, the imposition of punitive damages in violation of 42 U.S.C. §1981a(b)(1)[3] was plain error and "[h]ad the district court not corrected the error, . . . [precedent] would have compelled" the Fifth Circuit to do so. *Id.* at 365-66.

The undersigned finds the holdings of the *Silber* line of cases persuasive here because the role of the district court on judicial review of the Commissioner's decision is analogous to the role of an appeals court. Indeed, the Acting Commissioner does not deny the analogy in view of her citing an appellate court procedural rule in support of her waiver argument. *See* n. 1, *supra*. Nevertheless, the undersigned also finds ample authority for the Court's conclusion in a host of district court cases where the court concluded it had the authority to raise, *sua sponte*, arguments not raised by the claimant.

For example, in *Farely v. Colvin*, 231 F. Supp. 3d 335, 339-41 (N.D. Cal. 2017), plaintiff's counsel advanced only one argument, which the court found was clearly without merit. *Id*. at 337-38. Nevertheless, the court reversed and remanded for an award of benefits because it determined that

> [t]he administrative record clearly demonstrates that Farley has a disability . . . that should have caused the ALJ to find in his favor at step three. Farley's failure to raise this issue on appeal does not prevent the Court from considering it, particularly given the obviousness of the error, the clarity and completeness of the record, and the fact that Farley raised the issue of an epilepsy listing at the administrative proceedings.

*Id*. at 337. Moreover, like in this case, in *Farely* the Commissioner disputed the court's authority to raise the issue on its own but could cite no authority on point in support of

---
[3] Section 1981a(b)(1) authorized punitive damages in discrimination cases unless the defendant was a government, government agency, or political subdivision.

her position. *Id.* at 339-40. Pointing to, among other things, the nonadversarial nature of the underlying claims process in Social Security cases and the district court's duty to review the record for substantial evidence to support the ALJ's decision, the *Farely* court concluded that "there is no reason to treat the failure to raise an error as a reason for actively ignoring it." *Id.* at 339. *See also, e.g., AMP v. U.S. Commissioner Social Security Admin.*, No. 12-cv-0916, 2013 WL 3779203, at *1 (W.D. La. July 17, 2013) (district judge fully adopted R&R that found "plain error" encountered in the course of the court's review of the record was significant enough to warrant reversal though not raised by plaintiff); *Cortes v. Berryhill*, No. 3:16cv01910 (JCH), 2018 WL 1392903, at *2-6 (D. Conn. March 19, 2018) (court *sua sponte* raised issue of ALJ's failure to develop the record and reversed and remanded because it "could not ignore" a gap in record of mental health treatment); *Peterson v. Commissioner of Social Security Admin.*, No. 16-2912, 2018 WL 953345, at *1 n.1 (D. N.J. Feb. 20, 2018) (citing *Farely v. Colvin*, 231 F. Supp. 3d 335, 339-41 (N.D. Cal. 2017), for proposition that "court has the power to consider issues *sua sponte* in social security appeals) (unpublished). *Cf. Taylor-Tillotson v. Colvin*, No. 13-80907-CIV, 2014 WL 7211888, at *13 (S.D. Fla. Dec. 18, 2014) (stating that a reviewing court may *sua sponte* address issues in social security cases).

  Finally, in this case, Plaintiff has adopted the issue of plain error raised by the Court and has filed a brief in support of remanding the case; and, the Acting Commissioner has been granted a full and fair opportunity and has responded to that

brief.[4]  Accordingly, there is no prejudice to Defendant.  *See AMP*, 2013 WL 3779203 at *3 (though Commissioner did not get opportunity to brief issue, magistrate judge pointed out there would be an opportunity to file objections to the R&R).

## II. The ALJ's Failure to Consider the Opinions of Dr. Austin

### 1. Procedural Background

Plaintiff filed an application for child's Title XVI benefits on behalf of her child, N.L.K., on July 8, 2013, alleging that N.L.K. was disabled since July 8, 2013, due to neurofibromatosis, small optic nerve glioma, migraines, and "behavioral problems."  N.L.K. was 7 years old at the time Plaintiff applied for benefits on his behalf and was 10 years old at the time of the final administrative decision on March 10, 2016.

The agency denied Plaintiff's application upon initial determination, and she requested a hearing before an Administrative Law Judge (ALJ), which was held on November 10, 2015.  The ALJ issued the decision dated March 10, 2016, finding that N.L.K. was not disabled under the Act's standard for child's disability.  The ALJ found that N.L.K.'s neurofibromatosis and attention deficit hyperactivity disorder (ADHD) qualified as severe impairments under the Act, but that his "speech disorder" did not qualify as severe, and that none of his impairments met or medically equaled the criteria of any listed impairment for presumptive disability, including Listings 108.00, 111.00, and 112.11.  The ALJ then performed a functional equivalence analysis and found that N.L.K., who qualified as a school-aged child, had "less than marked" limitations in the domains of "acquiring and using information," "interacting and relating with others," "moving about and manipulating objects," "caring for yourself" and "health and physical well-being" but had "marked"

---

[4] Though the Acting Commissioner chose not to file a brief on the substantive issue in accordance with the Court's schedule, the Court has fully considered her response [28] to Plaintiff's brief.

limitation in "attending and completing tasks." Accordingly, the ALJ found that N.L.K. was not disabled and denied Plaintiff's application.

The Appeals Council denied review by notice dated April 25, 2017, making the ALJ's March 10, 2016, decision the Commissioner's final administrative decision for purposes of federal court review under 42 U.S.C. § 405(g).

### 2. Medical Evidence

The Court finds it unnecessary to recite all of the medical evidence in the case and will only reference that evidence that is relevant to its ruling.

### 3. Law and Analysis

Judicial review of the Commissioner's final decision of not disabled is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

In this case, though the ALJ found severe impairments of neurofibromatosis and ADHD, he determined these impairments were not listing level. The ALJ's finding of no disability is not supported by substantial evidence in the record, however, because the ALJ failed to properly consider and weigh Dr. Austin's opinions. Indeed, the ALJ merely referred to Dr. Austin's report as school records. The ALJ's failure to consider Dr. Austin's opinions prejudiced the claimant because the ALJ's determination regarding whether the claimant's

8

condition met, medically equaled, or functionally equaled a listed impairment may have been different had the ALJ given credence to Dr. Austin's opinions regarding the claimant's inability to get along with other and his poor concentration.

The regulations applying the child's disability standard direct that the Commissioner will find a child disabled if she has an impairment which meets, medically equals, or functionally equals an impairment in the Listing of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. §§ 416.924(a), 416.924(d) (2015). If the child does not meet a listed impairment, the Commissioner will perform a functional equivalence analysis to determine whether the child's impairments are functionally equivalent to a Listed Impairment. *See* 20 C.F.R. § 416.926a(a). The functional equivalence evaluation requires analysis and findings in six functional domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

If a child has "marked" limitations in two domains, or an "extreme" limitation in one domain, the Agency determines that the child has an impairment of "listing level severity." *Id.* at § 416.926a(d). A limitation is "marked" when it "interferes seriously with your ability to independently initiate, sustain, or complete activities and is also defined as a limitation that is "more than moderate" but "less than extreme." *Id.* Further, a marked limitation exists when an impairment or combination of impairments interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation is one that is more than moderate but less than extreme, the equivalent of functioning that would be expected to be found ". . . on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* On the other hand, a limitation is

9

"extreme" when it "interferes very seriously with your ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(3). "Extreme" is the rating given to the worst limitations. *Id.*

To illustrate the gravity of the ALJ's error, the Court will focus on the issue of functional equivalence. Here, the ALJ determined the claimant experienced a marked limitation in the domain of attending and completing tasks and a "less than marked" limitation in the domain of interacting and relating with others. Dr. Austin found that results of testing "suggest[ed] significant problems in the area[, among others] . . . of conflicts with teachers/peers" and that the claimant's "primary handicapping condition . . . [was] emotional due [in part] to . . . an inability to build and maintain relationships with peers and teachers."[5] Accordingly, it is possible that had the ALJ performed his duty of properly considering and assigning weight to Dr. Austin's opinions, Dr. Austin's opinions would have had a great impact on the ALJ's findings with regard to the severity of the claimant's functioning in the domain of interacting with and relating to others, particularly considering that Dr. Austin's report indicated the claimant had an "inability to build and maintain relationships with peers and teachers" and the fact that the record is replete with evidence that the claimant had disciplinary problems in school and didn't have any friends.[6] Here, SSR 09-5p is instructive

---

[5] Dr. Austin's opinions constitute medical opinions within the meaning of the regulations and should have been considered. *See* 20 C.F.R. § 404.1527(a)(1) and § 416.927(a)(1) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). *See also* 20 C.F.R. § 404.1527(b) and 416.927(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). *Also see* 20 C.F.R. §404.1520b ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have.").

[6] It is worth noting here that among the medical evidence that the Commissioner may consider in making a determination of whether a child has a "marked" or "extreme" limitation are the results of ". . . formal testing that provides information about [the child's] . . . development or functioning in terms of percentiles, percentages of

because it states that with respect to this domain, the agency considers the "child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others. . . Important aspects of both interacting and relating are the child's response to persons in authority, compliance with rules, and regard for the possessions of others." SSR 09-5p, 2009 WL 396026. Furthermore, Dr. Austin opined that under the State Department of Education's guidelines, the claimant was eligible for an "emotionally disabled" ruling.[7] Dr. Austin's opinions were not considered with regard to either of the six domains. Ultimately, to the extent Dr. Austin's opinions support a finding that the claimant's functioning in the domain of interacting and relating with others was marked, as opposed to merely "less than marked," the claimant would demonstrate listing-level severity and, therefore, be entitled to a presumption of disability under the regulations. *See* 20 C.F.R. § 416.926a(a). Because this Court is unable to conclude that the ALJ's determination is supported by substantial evidence in the record and because the substantial rights of a child are at stake, justice requires this case be remanded.

On remand, the ALJ shall fully and properly consider and weigh the opinions of Dr. Austin. To the extent the ALJ finds Dr. Austin's opinions require further explanation or clarification, the ALJ must recontact Dr. Austin. Additionally, the ALJ will fully consider and discuss the statistical relevance of the scores included in Dr. Austin's report. Further, the ALJ must enlist the assistance of a medical advisor(s) who shall review all of the medical evidence, school records, and standardized test results in the file and provide an opinion on the issue of

---

delay, or age or grade equivalents." 20 C.F.R. § 416.926a(e)(1)(ii). Pursuant to the regulations, when a child has standard test scores, the agency "will consider them together with the information . . . [it] . . . [has]" about the child's functioning. *Id.* In the area of "social skills," Dr. Austin's report indicates the claimant scored only in the 4th percentile on the "Behavior Assessment System for Children-Second Edition." On another standardized test, the Battelle Developmental Inventory – 2nd Edition, administered in 2011, the claimant was determined to be significantly delayed in the area of "Peer Interaction." The ALJ did not discuss the statistical import of these scores.

[7] *See* SSR 06-3p which requires the ALJ to consider disability determinations from other agencies.

11

whether the claimant met, medically equaled, or functionally equaled a listed impairment. The ALJ may conduct any additional proceedings not inconsistent with this order and must ultimately issue a new decision.

This, the 28th day of September, 2018.

/s/ Jane M. Virden
U. S. Magistrate Judge